UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TRACY E. BURNSIDE, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:08-cv-928 |
| | ) |
| v. | ) Honorable Robert Holmes Bell |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |
| _____ | ) |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On August 22, 2004, plaintiff filed his application for DIB benefits alleging a December 20, 2000 onset of disability. (A.R. 74-76). He later amended his claim to allege a December 1, 2002 onset of disability. (A.R. 46). His disability insured status expired on December 31, 2002. Thus, it was plaintiff's burden to submit evidence demonstrating that he was disabled on or before December 31, 2002. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim was denied on initial review. (A.R. 31, 62-66). On August 7, 2007, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 327-70). On October 22, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 19-28). On August 5, 2008, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On October 3, 2008, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB benefits. The issues raised by plaintiff are as follows:

I. The ALJ failed to give proper weight to the opinions of the plaintiff's treating physician, contrary to 20 C.F.R. § 404.1527 *et seq.* and SSR 96-2p, 96-5p, and Sixth Circuit case law;

II. The ALJ improperly rejected plaintiff's testimony in violation of SSR 96-7p;

III. The ALJ's finding regarding plaintiff's RFC is not supported by substantial evidence:

   A. "Although the ALJ determined that plaintiff's obesity [was] a severe impairment, he failed to consider the impact of plaintiff's obesity on his ability to work in violation of SSR 02-01p or to include a function-by-function analysis [as] required by SSR 9[6]-8p;"

   B. "The ALJ's decision relating to plaintiff's depression was not supported by the record as required by SSR 96-8p and applicable case law;"

   C. "The ALJ's decision that plaintiff could perform his past relevant work or sedentary work with some limitations is not supported by substantial evidence as required by Sixth Circuit authority and social security regulations;" and

IV. The ALJ committed reversible error in failing to find that plaintiff's impairments met or equaled a listed impairment, "contrary to 20 C.F.R. 404.1526 and 20 CFR 404.1599, Suppart P, Appendix A and SSR 96-5p."

(Statement of Errors, Plf. Brief at iii, docket # 10).[1] Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision, and I recommend that the Commissioner's decision be affirmed.

---

[1] Plaintiff capitalized the first letter in almost every word within his statement of errors. The quoted text has been modified only to conform to standard English.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability of December 1, 2002, through December 31, 2002, but not thereafter. Plaintiff had not engaged in substantial gainful activity on or after December 1, 2002. (A.R. 21). The ALJ found that plaintiff had the following severe impairments: "morbid obesity, back pain, edema in his legs, and history of congestive heart failure." (A.R. 21). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 23-24). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a narrowed range of light work. The claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, he could stand and/or walk for a total of at least 2 hours, could sit for a total of about 6 hours, and could do unlimited pushing and/or pulling. He could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally and would be totally restricted from climbing ladders, ropes and scaffolds.

(A.R. 25). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible. (A.R. 26-27). Plaintiff's past relevant work as a "mechanical drafter" did not require the performance of work precluded by his RFC. (A.R. 28). Thus, the ALJ found that plaintiff was not

disabled at Step 4 of the sequential analysis[2] because, through his date last disability insured, plaintiff was capable of performing his past relevant work. (A.R. 21-28).

Alternatively, the ALJ found that plaintiff was not disabled at Step 5 of the sequential analysis. Plaintiff was 47-years-old in December 2002. Thus, at all times relevant to his claim, plaintiff was classified as a younger individual. Plaintiff has more than a high school education and is able to communicate in English. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 6,500 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 364-66). The ALJ found that this constituted a significant number of jobs and held that plaintiff was not disabled. (A.R. 21-28).

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that []he is not engaged in substantial gainful activity. Next, the claimant must demonstrate that []he has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that h[is] impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that []he is incapable of performing work that []he has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

**1.**

Plaintiff argues that the ALJ failed to give proper weight to the opinions of his treating physician, Mary Slater, M.D. (Plf. Brief at 11-14; Reply Brief at 1-3, docket # 13). Upon review, I find no error.

Plaintiff claimed a December 1, 2002 onset of disability. His disability insured status expired on December 31, 2002. He presented very little evidence regarding his medical condition in December 2002. Progress notes from Dr. Slater[3] dated December 23, 2002, are the only evidence from an acceptable medical source.[4] (A.R. 200-01). Dr. Slater stated that she spent approximately 30 minutes with the patient, and "greater than 50% of the time [was] spent in discussion/consultation of low-fat, low cholesterol diet, as well as abnormal blood work and depression." (A.R. 200). Plaintiff's blood work indicated elevated alkaline phosphate and cholesterol. Dr. Slater wrote, "He knows he needs to follow a low-fat, low cholesterol diet and he is not doing it. . . . He admits very frankly that he does not eat right and he does not exercise. He is morbidly obese. . . . He understands the importance of eating right and exercising. He admits he is just not doing that."

---

[3]Dr. Slater first examined plaintiff in June 2001. (A.R. 208). On January 15, 2002, Dr. Slater noted that plaintiff had not been to her office "for some time." (A.R. 205). Plaintiff had not been compliant with her treatment recommendations that he exercise and stop smoking. Plaintiff denied any chest pain, shortness of breath, or trouble breathing. Plaintiff was "alert, very pleasant, [and] in no acute distress." (A.R. 201).

[4]The notes from social worker Susan Weaver dated December 9, 2002 and December 31, 2002 (A.R. 144-45) are not evidence from an acceptable medical source. 20 C.F.R. § 404.1513. Plaintiff began his marital counseling with Ms. Weaver in August of 2001. Weaver's notes state that plaintiff was having "another computer affair" and that his wife was aware of it. (A.R. 151). His "cyber-partner was coming for a week's visit from Finland." Plaintiff was trying to decide if there was a future in "their relationship." (*Id.*). On December 31, 2002, Ms. Weaver recorded plaintiff's statement indicating that he was "ready for change," and that he had a "very positive dream about an ornate salad on top of a mountain." (A.R. 144).

(A.R. 200). Plaintiff weighed at least 434 pounds. Plaintiff was taking Celexa for his depression. He reported that this medication was helping, and that he was not suicidal. Upon examination, Dr. Slater found that plaintiff was "awake, alert, very pleasant, [and] in no acute distress." His heart was "regular." Plaintiff's extremities were warm, with some edema. Plaintiff's reflexes in his lower extremities were "+1." (A.R. 200).

Plaintiff relies on the statements that his attorney elicited from Dr. Slater on March 23, 2006 (A.R. 179-82) and August 23, 2007 (A.R. 316-19). The ALJ gave careful consideration to these statements, but found that they were entitled to little weight because Dr. Slater's opinions were first expressed years after plaintiff's disability insured status had expired, were not well-supported by objective evidence, and were inconsistent with Dr. Slater's own treatment notes:

> In assessing the weight to be given to the opinion in Dr. Slater's questionnaires on March 23, 2006 (Exhibit 7F)[A.R. 179-82] and August 23, 2007 (Exhibit 11F)[A.R. 316-19], the undersigned finds the treating physician's bare opinion is not sufficient in and of itself to establish disability. The undersigned points out that the opinion with regard to disability was made 4 to 5 years after the date last insured and is inconsistent with her office records; therefore, less weight is given to such opinions as no finding of disability was made at that time. The undersigned places little weight on these questionnaires as the records on and prior to December 31, 200[2], do not even consider the issue of disability. In response to a question by plaintiff's attorney, Dr. Slater opined that the claimant would have been unable to work at even a sedentary job with a sit/stand option. She stated that there was probably disease in the back at that time even though there were no imaging reports to support that statement. She also noted that his mobility had been poor since she met him and that he had edema even on medication. She opined that the claimant would have been limited based on the congestive heart failure and the amount of edema in his legs which would require him to keep his legs elevated for long periods of time; however, there is no indication in the office records that the doctor recommended elevating his legs at that time. She also reported that his significant back pain would have been limiting at that time despite not having diagnostic testing to support her statement. In response to questioning in the statement dated August 23, 2007, Dr. Slater reported that, on or prior to December 31, 2002, the claimant could not ambulate effectively; would not have been able to walk a block at a reasonable pace, to use standard public transportation, or to carry out routine ambulatory activities such as walking into the grocery store without an electric cart or some type of aid and/or walking into a bank; and would have difficulty climbing 6 steps.

(A.R. 27).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Dr. Slater's opinion that plaintiff was disabled was not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). The credibility of the plaintiff's subjective complaints is an issue

reserved to the Commissioner, and a treating physician's opinion regarding the credibility of his patient's subjective complaints is not entitled to any particular weight. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x 563, 570 (6th Cir. 2009); *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

I find no violation of the treating physician rule. The ALJ's opinion is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for giving little weight to Dr. Slater's opinions.

**2.**

Plaintiff argues that the ALJ "improperly rejected" his testimony:

> In determining that Plaintiff was not disabled during the relevant time period, the ALJ stated that he did not find Plaintiff's testimony credible because he failed to lose weight or stop smoking. Although the ALJ summarized plaintiff's testimony, he failed to give it proper weight or provide an adequate basis for rejecting the testimony.

(Plf. Brief at 14; *see* Reply Brief at 4-5). Upon review, I find that the ALJ correctly applied the law, and that his credibility determination is supported by more than substantial evidence.

Credibility determinations concerning a claimant's subjective complaints is peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see McGlothlin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review,

[the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ's opinion contains a lengthy discussion of the medical evidence, plaintiff's subjective complaints, and the reasons why the ALJ found that plaintiff's testimony was not fully credible:

> The claimant testified that he quit working because he was having increasing pain in his back and legs, weakness and swelling in his legs, and a great deal of fatigue that prevented him from working on a fulltime basis in a job in which he was allowed the option of sitting or standing. The claimant testified that prior to the date last ensured he weighed around 400 pounds, was walking with a cane, and was not very active. He stated that he was having marital problems when he had an on-line relationship and that he and his wife underwent couples counseling. The claimant testified that he and his wife had worked through their problems and were still together. Prior to December 31, 2002, he was doing art and pencil drawings and was considering pursuing an art education at Western Michigan University. He stated that Dr. Slater sent him to a psychiatrist who prescribed Lexapro; however, there is no record of any psychiatric treatment prior to the date last insured. The record shows that the claimant was being prescribed Celexa by his treating physician, Dr. DeYoung. Although the claimant used a scooter at hearing, he testified that he did not start using it until after his mother's death as it had been her scooter. He testified that he was treated in the emergency room in 2000 for shortness of breath, that he was found to have congestive heart failure with 80 pounds of excess[] water in his body, and that he would get cellulitis in his legs. He testified that, on and prior to the date last insured, he did no household chores but slept a lot, read, and watched television. He stated that his physical health affected his cognitive functioning and that he was not mentally the same as he was when he was working, that he

> needed help with putting on compression stockings, and that he started giving up driving because he could not turn his head to look out the windows and could not feel the pedals to know if he was hitting the gas for the brake pedal. He stated that he did not go anywhere other than doctors' appointments in 2002, that his wife would drive him to his appointments, that he walked very slowly, and that his wife would get a wheelchair if it was too far for him to walk into a building. He alleged that he could walk only to the end of his driveway and back to the house.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> On and prior to December 31, 2002, the record does not support the claimant's allegations of disabling limitations. The claimant testified that he required use of a cane and was not very active. He was undergoing couples counseling due to marital problems as a result of an online relationship. [A.R. 151]. He was doing art and pencil drawings and was considering pursuing an education in art at Western Michigan University. [A.R. 150]. On May 2, 2002, the claimant reported to Julie Bowser (a certified physician's assistant in Dr. Slater's office) that he was feeling fine. [A. R. 202]. In her office note of January 15, 2002, Dr. Slater reported that the claimant was not compliant with exercise, dieting and smoking cessation. [A.R. 205]. In her October 2002 note, she reported the claimant had seen Susan Weaver for the first time in over 1 ½ years. [A.R. 201]. Other records report him as depressed. The records from 2002 and 2003 also show that he was not dieting, not exercising, lacked motivation, and was noncompliant in taking prescribed potassium. All in all, he was not a compliant patient for the treating sources in the time frame.

(A.R. 26). The ALJ credibility finding is supported by more than substantial evidence and the ALJ gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

The record establishes that in and around December 2002, the period plaintiff claims he was disabled, he was not compliant with the recommended treatment that he exercise, lose weight, and stop smoking. Social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for his failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §

404.1530(b). Plaintiff did not provide good reasons for his failure to do what was medically necessary. The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). In *Sias*, the Court of Appeals emphasized that the Social Security Act did not repeal the principle of individual responsibility:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself into an early grave, that is his privilege - but if he is not truly disabled, he has no right to require those who pay social security taxes to underwrite the cost of his ride.

*Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). I find no error.

**3.**

Plaintiff argues that the ALJ's factual finding regarding his RFC is not supported by substantial evidence. (Plf. Brief at 16-21). The ALJ found that in December 2002, plaintiff retained the "residual functional capacity to perform a narrowed range of light work. The claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, he could stand and/or walk for a total of at least 2 hours, could sit for a total of about 6 hours, and could do unlimited pushing and/or pulling. He could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally and would be totally restricted from climbing ladders, ropes and scaffolds." (A.R. 25). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *Griffith v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). Upon review, I find that the ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ did not satisfy the requirements of SSR 96-8p. (Plf. Brief at 16-17).[5] `SSR 96-8p describes RFC as a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at 3. Plaintiff argues that the ALJ did not provide an adequate functional assessment of his pain in his legs, inability to walk more than five yards, and inability to use stairs. (Plf. Brief at 17). The ALJ expressly addressed plaintiff's claims of leg and back pain, fatigue, and difficulty walking, and he found that plaintiff's testimony was not fully credible. (A.R. 26). The ALJ cannot be faulted for failure to include plaintiff's exaggerated subjective limitations in his RFC determination.

Plaintiff's argument that the ALJ failed to adequately consider the impact of obesity under SSR 02-1p cannot withstand scrutiny. Obesity was plaintiff's primary impairment. The ALJ expressly considered and applied SSR 02-1p. (A.R. 21, 24). The Social Security Administration removed obesity as a listed impairment[6] because in its experience, "[T]he criteria in listing 9.09 did not represent the degree of functional limitation that would prevent an individual from engaging in any substantial gainful activity." *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (reprinted in 2000 WL 628049, at * 1 (SSA Sept. 12, 2002)). SSR 02-1p states that the Administration "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity

---

[5] SSR 96-8p emphasizes that RFC is the most a claimant can do despite his impairments. *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (reprinted in 1996 WL 374184, at * 2, 4 (SSA July 2, 1996))

[6]"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' [20 C.F.R.] § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009).

of functional limitations of the other impairment." *Id.* at 6. The ruling notes that obesity "can cause limitation of function" and that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* The ALJ took the combined effect of plaintiff's obesity with other impairments into account. (A.R. 23-28). I find no error.

Plaintiff's claim that the ALJ committed reversible error when he failed to find that plaintiff was suffering from severe depression in December of 2002 (Plf. Brief at 19; Reply Brief at 3-4) lacks merit. The ALJ's finding that plaintiff's mental impairments would have had no more than a minimal effect from an occupational standpoint (A.R. 23) is well supported.

Plaintiff argues that the ALJ committed reversible error in finding that he was capable of performing his past relevant work at Step 4 of the sequential analysis, and alternatively at Step 5, finding that he was capable of performing other jobs existing in substantial numbers in the regional economy. These arguments are based on according full credibility to his testimony regarding his subjective functional limitations. (Plf. Brief at 19-21). The ALJ found that plaintiff's testimony was not fully credible, and that finding is supported by more than substantial evidence. I find no error in the ALJ's decision finding that plaintiff was not disabled at Steps 4 and 5 of the sequential analysis.

**4.**

Plaintiff argues that the ALJ's decision should be overturned because he failed to find that plaintiff equaled the requirements of listing 1.02 for "major dysfunction of a joint." He argues that, "Dr. Slater stated that on and before December 31, 2002, Plaintiff's impairments, in combination, were at least as severe as the criteria in Listing 1.00, particularly with reference to

1.00(B)(2)(b) and 1.02." (Plf. Brief at 22). This argument does not provide a basis for disturbing the Commissioner's decision.

"In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing." *Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). Coming close to meeting the requirements of a listed impairment "is insufficient." *Id.* Listing 1.02 contains these specific requirements:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. Plaintiff did not present evidence of major dysfunction of joints characterized by "gross anatomical deformity." He did not present evidence of "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." He did not present evidence of involvement of a major peripheral weight-bearing joint as required by Part A. He did not present evidence of involvement of a major peripheral joint in each upper extremity as required by Part B. In short, plaintiff met none of the requirements of listing 1.02.

Plaintiff's argument that he equaled the requirements of listing 1.02 is based on the statement his attorney elicited from Dr. Slater nearly five years after plaintiff's date last disability insured:

> Q   This is Tuesday, August 21, 2007 and I'm talking to Dr. Mary Slater, M.D. . . . My first area of questioning relates to the social security listings which are written medical criteria and there is a section for the musculoskeletal system and I want to focus on section 1.02 which relates to major dysfunctions of a joint. Now it is my impression that he doesn't meet the specific criteria of that section but my question is whether, if considering the severity of all his problems, including his obesity, he meets the equivalent of that section, in particular, the severity portion of that section which requires that the underlying problems result in an inability to ambulate effectively as defined by section 1.00B2b. I have a copy of that regulation and I want to show to you and ask whether you have an opinion whether or not he could ambulate effectively as of December 31, 2002?
>
> A   According to this definition, he could not ambulate effectively. He could not have walked a block at a reasonable pace.
>
> Q   And you are looking at subsection 2 and you specifically are saying that in 2002 he was unable to walk at a reasonable pace?
>
> A   Correct.

(citing A.R. 316). The issue of whether a claimant meets or equals the requirements of a listed impairment is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Dr. Slater's opinion that plaintiff met or equaled the requirements of listing 1.02 was not entitled to any particular weight. *Warner*, 375 F.3d at 390; *see Zaph v. Commissioner*, No. 97-3496, 1998 WL 252764, at * 2 (6th Cir. May 11, 1998) ("[T]he issue of whether an individual's impairment is equivalent to a listed impairment is an administrative finding, not a medical one."). Limited ability to walk falls well short of equaling the stringent requirements of listing 1.02 which, among other things, requires medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). *See e.g.*, *Jamison v. Astrue*, No. 2:08-cv-232, 2010 WL 405954, at * 4 (N.D. Ind. Jan. 25,

2010); *Flloyd v. Astrue*, No. 4:08-cv-93, 2009 WL 2244533, at * 5-6 (E.D.N.C. July 27, 2009);

*Savage v. Astrue*, No. 08-583-cv, 2009 WL 1664625, at * 4 (W.D. Mo. June 15, 2009).

      The ALJ found that plaintiff did not meet or medically equal the requirements of any listed impairment for the musculoskeletal system:

> Although the evidence of record clearly documents that diagnostic testing of the claimant's back performed in 2004 confirmed degenerative changes, there is no annotation in the treatment notes and reports of his medical source to document any significantly decreased range of motion of [his] lumbar spine on or prior to the date last insured. There is no objective evidence of significant muscle weakness, atrophy, recurrent spasm or evidence of any spinal-related motor, reflex, sensory or neurological deficits. . . . [T]he claimant has a problem with obesity. The claimant was able to ambulate without an assistive device. The undersigned has considered the claimant's obesity under SSR 02-1p. There is no medical evidence of a diagnosis of significant compromises or disorders of other body systems such as musculoskeletal, cardiovascular, vascular, and pulmonary systems. Limitations reasonably attributable to the claimant's impairments are included in the residual functional capacity, which does not preclude light work.

(A.R. 24). The ALJ's Step-3 finding that plaintiff did not meet or equal the requirements of any listed impairment is supported by more than substantial evidence.

## **Recommended Disposition**

      For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  March 4, 2010          /s/ Joseph G. Scoville
                                                 United States Magistrate Judge

## **NOTICE TO PARTIES**

      Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).